DEC 22 2025 PM4:10
FILED - USDC - FLMD - ORL

Provided to South Bay Corr. and Rehab. Facility on October 16, 2012 for mailing.
SK

# PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: **Middle** |
|---|---|
| Name (under which you were convicted):<br>**SEAN ROBERT KILLIAN** | Docket or Case No.:<br>**05-CF-4764-O/B** |
| Place of Confinement:<br>**South Bay Correctional Facility**<br>**P.O. Box 7171; South Bay, FL 33493** | Prisoner No.:<br>**D.C. # 169355** |
| Petitioner | Respondent |
| **SEAN ROBERT KILLIAN**   v.   **STATE OF FLORIDA,** ||
| The Attorney General of the State of Florida: Pamela Jo Bondi ||

## PETITION

1. (a) Petitioner was convicted in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida.

    (b) Case No. 05-CF-4764

2. (a) Petitioner was convicted on October 7, 2005.

    (b) Petitioner was sentenced on December 9, 2005.

3. Petitioner was sentenced to Life without the Possibility of Parole.

4. Petitioner was not convicted on more than one count or crime.

5. Petitioner was convicted of Murder in the First Degree.

6. Petitioner's plea was not guilty.

    (c) Petitioner had a jury trial.

7. Petitioner did not testify at any pretrial, trial, or post-trial hearings.

8. Petitioner appealed his conviction and sentence.

9. Information related to Direct Appeal.
    (a) Petitioner appealed to the Florida Fifth District Court of Appeal.
    (b) Case No. 5D06-2164
    (c) The District Court affirmed the judgment and sentence.
    (d) The date of decision was August 14, 2007.
    (e) *Sean Robert Killian v. State*, 962 So.2d 918 (Fla. 5th DCA 2007)
    (f) The ground raised regarded prejudicial closing statements made by the State.
    (g) Petitioner did not seek review by a higher court.
    (h) Petitioner did not file a petition for certiorari in the United States Supreme Court.

1

10. In addition to Direct Appeal Petitioner has filed other petitions and motions.

11. (a) (1) Name of Court: The Fifth District Court of Appeal.

   (2) Case no. 5D08-1016

   (3) Filed April 1, 2008

   (4) Rule 9.141(c) Habeas Corpus Petition alleging Ineffective Appellate Counsel.

   (5) Grounds raised: **Ground One:** Ineffective Assistance of Appellate Counsel (IAAC) for Failing to Raise Discovery Violation; **Ground Two:** IAAC for Failing to Raise Improper Admission of Co-Conspirator Hearsay; **Ground Three:** IAAC for Failing to Raise Prejudicial Use of Summary Chart; **Ground Four:** IAAC for Failing to Raise Prejudicial References to Petitioner's Incarceration; **Ground Five:** IAAC for Failing to Raise Failure to Give Self-Defense Instruction; **Ground Six:** IAAC for Failing to Raise Excessive Leading; **Ground Seven:** IAAC for Failing to Raise Unlawful Search of Cell Phones; **Ground Eight:** IAAC for Failing to Raise Failure of Predicate for Confession; **Ground Nine:** IAAC for Failing to Raise Prejudicial References to Uncharged Offenses; **Ground Ten:** IAAC for Failing to Raise Denial of Judgment of Acquittal Motion; **Ground Eleven:** IAAC for Failing to Raise Trial court's Erroneous Denial of Motion for New Trial; **Ground Twelve:** IAAC for Failing to Raise Disparate Sentencing Issue; **Ground Thirteen:** IAAC for Failing to Raise State's Fundamentally Inconsistent Theories of Same Offense.

   (6) Petitioner did not receive a hearing on this petition.

   (7) Result: Petition was denied.

   (8) Date of result: Petition denied on November 19, 2008, and Rehearing denied on January 9, 2009.

(b) Petitioner also filed a Rule 3.850 Motion for Postconviction Relief.

   (1) Postconviction Motion was filed in the Ninth Judicial Circuit Court, in and for Orange County, Florida.

   (2) Case No. 48-2005-CF-4764

   (3) Date of initial filing was through Counsel on September 9, 2009, stricken as untimely/unsworn on September 15, 2009 with "forty-five days to file a legally sufficient-sworn motion," filed as 3.850(b)(3) on October 28, 2009 and amended (with same claims) on March 26, 2010.

   (4) Nature of the proceeding was alleging ineffectiveness of Defense Counsel.

   (5) Grounds raised: **Ground One:** Failure to Strike Biased Juror; **Ground Two:** Failure to call Eyewitnesses; **Ground Three:** Failure to Introduce Exculpatory Language Barrier; **Ground Four:** Failure to Advise of Right to Testify; **Ground Five:** Failure to Call Co-Defendant; **Ground Six:** Failure to Investigate/ Familiarize/Focus on Case; **Ground Seven:** Failure to file Motion in Limine to Prohibit Uncharged Crime Mentions; **Ground Eight:** Failure to Object to Prejudicial Statements; **Ground Nine:** Cumulative Impact of the Errors.

   (6) Petitioner did not receive a hearing where evidence was given.

   (7) The Postconviction Motion was denied.

   (8) The Motion was denied on January 19, 2012, and Rehearing was denied on March 6, 2012.

(d) Petitioner appealed to the Fifth District Court of Appeal, Case No. 5D12-0726 and was denied October 16, 2012.

12. Petitioner has exhausted his state court remedies with respect to the grounds raised in the instant petition. This petition is timely filed.

### GROUND ONE
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR SEATING A BIASED JUROR, DENYING PETITIONER HIS RIGHT TO AN IMPARTIAL JURY

**SUPPORTING FACTS:** During jury selection prospective jurors were asked whether they would give more weight to the testimony of a police officer simply because of their status. Prospective Juror 5, Juror 26, and Juror 4 all answered "yes," openly admitting they would favor police testimony over the testimony of ordinary citizens (See Voire Dire Transcripts "VD" 98-100). The trial court recognized this specific answer as disqualifying bias by striking Jurors 5 and 26 for cause (VD 118, 122-123).

However, Defense Counsel took no action when Juror 4, Dixie Leigh Keller, gave the exact same answer. As a direct result, Ms. Keller—a juror who had expressly declared she could not be impartial—was seated on the jury that heard State proffered law enforcement testimony and convicted the Petitioner (VD 117-118). This failure meant Petitioner was judged not by a panel of impartial citizens, but by a jury predisposed to convict based on the status of the State's witnesses, a violation of his right to a fair trial.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

### GROUND TWO
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PRESENT KNOWN EYEWITNESS TESTIMONY THAT WOULD HAVE PROVEN PETITIONER'S INNOCENCE

**SUPPORTING FACTS:** The State's case was entirely circumstantial. It lacked any direct evidence—no eyewitnesses, no fingerprints, no DNA—placing Petitioner at the scene (See Trial Transcripts "TT" pages 469, 548-550, 575-576). The State's entire theory depended on convincing the jury that Petitioner and co-defendant, Adolfo Negron, were the two men seen fleeing the scene (See TT 24). Defense Counsel was aware of, and had access to, two available and willing eyewitnesses, Christopher Plummer and Darnell Jerome Washington, whose testimony would have made the State's theory a physical impossibility (See

3

Discovery "D" pages 32-33, 142-143). However, Defense Counsel chose to preserve Closing Arguments rather than vindicate his client (TT. 322-332).

Here is the State's summary argument at trial:

> So the long and short of it is, on one side they pull up in the car and two people go up. Then they hear shots. And we're gonna present to you a witness who sees three people come down the other side, one is gonna end up being dead, and the two others are Negron and Killian, Now they don't recognize them, but that's who you know it's gonna be ...that's the Story, the way it happened. (TT. 24/6-12, 24/18)

The only eyewitness the State offered at trial was Jody Chambers ("Chambers"), a graduate assistant from Pegasus Landing's housing department. He testified that he was in his office nearby as he heard several loud firework type noises outside (TT. 117/15-121/4). Peering out of the window, he saw a black male pass by from the direction of the staircase and head west, then two other individuals who came down the stairs and headed east (TT. 121/5-122/11). The lighting was not very bright (TT. 143/22 - 144/2), and his field of vision was limited (TT. 146/9-10). Chambers was unable to identify anyone (TT. 147/29), and could not positively say if the deceased was the first individual that he saw (TT. 124/15-19, 148/3-149/12).

In contrast, compare UCFD Detective Kelli Smith's observation of Christopher Plummer's angle: "I asked him to show me his room and the window he looked from. The stairwell was well lit, and by leaning against the right side of the wall, the view of the staircase was visible and unobstructed." (D. 62).

Accordingly, Mr. Plummer witnessed the same scene and described it in more detail:

> I was witness to a shooting at the apartment near my home. I saw a dark male jump from the 2nd story stairwell in my apt complex after hearing two shots fired, within seconds, more shots were fired totaling what I believe to be 6-7 total (4 or 5 in a second volley). I then saw, approximately 2-3 seconds following the man who was shot, two white male late teens early twenties between 5'6" and 5'9" walking down the stairwell from the window inside my bedroom. One was wearing a dark red w/black hooded sweatshirt with pale white skin and short brown hair, some facial stubble. The other man was wearing a navy blue (or dark blue sweatshirt also hooded) and had white trim on the sweatshirt following the victim... [Later] I saw... - the victim near the sand volleyball court... (D. 142-143).

Mr. Washington independently corroborated this testimony:

> Darnell Jerome Washington... stated that he went to Pegasus Landing apartments on 20 Dec 04 at approximately 7pm... He stated he remembered seeing 2 Spanish looking guys standing on the sidewalk outside of building #33. He stated that they were just casually walking at the time that he observed them. He said they were fair skinned white or Caucasian males and not black males. He described them as being 18 to 23 years old, both approximately 5'8 both were wearing what he termed "Hip Hop" clothing, baggy shirts. He stated that he couldn't remember if they were wearing jackets. (D. 32-33).

This testimony would have been devastatingly exculpatory at trial. Petitioner is eleven inches taller than his co-defendant, a stark difference that cannot be reconciled with independently corroborated

4

eyewitness testimony that the two suspects were the same approximate height. Counsel was aware as he informed the court in side bar that it was not Petitioner but another friend of Negron's, Marcus Mercado, who had been positively identified at the scene by Mr. Plummer (TT. 321-330, 415, 424). Notably, Mercado was the very first person to implicate Petitioner in the incident, although UCFPD Detective Hartsfield had presented Mr. Plummer with lineups including both he and Petitioner:

> The above lineup was shown to witness Christopher Plummer who is 75% sure the male in photo #5 (Marcus Mercado) was seen at the crime scene. Also, Florida Driver's license photo shown to witness after initial I.D. of #5 in Lineup. (D. 3983-3984)

Mr. Plummer incidentally increased his certainty to 85% in identifying Mercado as Negron's accomplice (D. 3985). However, while Defense Counsel brought this before Judge he never introduced the information to the jury. Nor did he show that the Petitioner had been effectively vindicated by the witness. Detective Hartsfield's visit with Mr. Plummer concerning Petitioner follows:

> On 21 Apr 05 at approximately 1050 Hrs, I went to witness Christopher Plummer's address to meet him and show him a photo lineup of Shawn sic Killian. Mr. Plummer looked at the lineup and stated that he hadn't seen any of them. He stated he doesn't even remember seeing anybody with long hair around the complex. I told him if he could [sic] imagine the pictures with the hair pulled back and look at the facial features. He still said he didn't recognize anyone. (D. 58)

Mr. Plummer's testimony at trial would have highlighted that the suspects were the same height, while Petitioner is a foot taller than Negron, that the suspects were Hispanic looking with short hair, while Petitioner is an obviously Caucasian male with long hair. To preserve first and last Closing Arguments (TT. 322/10-14, 325/1-332/6), Counsel opted only to argue what the State had already admitted (VT. 24/6-12, 548/18 — 549/1), the fact that the State could not produce an eyewitness to place Petitioner at the scene of the crime (TT. 34/15 - 36/20, 468/5-15, 545/12-16, 575/17 - 576/15). The omissions were not merely conflicting testimony; but objective, factual proof that the two men fleeing the scene could not have been the Petitioner alongside Negron as the State argued, which is exactly what Defense Counsel argued at trial, without offering the readily available conclusive proof (TT. 35-36, 532-533, 575-576).

By failing to call these witnesses and introduce this evidence, Counsel allowed the State's factually impossible theory to go completely unchallenged. Counsel failed to present a known, available, and complete defense of actual innocence, thereby depriving Petitioner of his constitutional right to present a defense and have his guilt or innocence adjudicated on the actual facts.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

## GROUND THREE
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO NEUTRALIZE THE STATE'S KEY CORROBORATING EVIDENCE OF CELL PHONE RECORDS

**SUPPORTING FACTS:** A cornerstone of the State's circumstantial case was a log of phone calls made between Petitioner's phone and his co-defendant's phone. The prosecutor repeatedly argued to the jury that these calls "confirm" Petitioner's role as the "seller" who was coordinating the crime (TT. 550, 562-564). While the chart made from phone records was the single most contested point at trial, Defense Counsel possessed and failed to introduce indisputable evidence that would have neutralized this argument: the key phone conversations were conducted entirely in Spanish (D. 747, 2574, 2578, 4500, 4585). Petitioner does not speak or understand Spanish. Counsel never presented this critical fact to the jury. His failure allowed the State to transform the phone calls into the sole material evidence inculpating Petitioner.

> Tarvin Kennon wanted to buy some dope, and he contacted Ponder, who contacted Esteves, who contacted Negron. And Negron was gonna take them to the seller. Now, we have the three of them picking up Negron... -and they go to the point of sale. And Negron and Tarvin Kennon go upstairs to buy the dope ...So it's logical that you're gonna have ...at least three people come down, 'cause there's got to be a seller. (TT. 547/19-548/7)

> So then you say, well, the Only evidence we have that he was involved were the statements [of Hamrick and Medranda]. That's not quite true, but it's close to true. We've got evidence from cell phone ...records which show that Sean Killian was calling Adolfo Negron back and forth this whole time, communicating, setting it up. When you gonna get here? How are we gonna do this? Okay? (TT. 550)

> The evidence is gonna be ...that Mr. Negron, who was seen going up with Mr. Kennon, and Mr. Killian had lots of phone calls back and forth between them on their two phones that day. You'll see a chart of the cell phone calls as to who was calling who and when. And, basically, Mr. Kennon met with Mr. Ponder, Mr. Ponder called Mr. Esteves, Mr. Esteves called Mr. Negron, Mr. Negron called Mr. Killian... [who] was the end of the chain. Mr. Killian was there to pretend to be the seller. (TT. 32-33)

Although the trial court never got to hear about it, the calls occurred in Spanish, a language Petitioner does not speak, and which is well known to the investigators and State.

> Yeah, the dude—the dude called him. No, he called the dude. That's like, when we we're pulling into the—right before the Walgreen's, he was like, where—in Spanish, he was like, "we're coming in right now. You know, I'll be there in a second."(D. 2574, 2578, 4500, State's Witness Jest Esteves)

> I heard him call a guy, uhm, I don't know how many times... He was talking to the guy in Spanish. (D. 747, Later tried co-defendant Napoleon Ponder)

> When you got in that parking lot, you made a call...would you believe it if I told you he understands Spanish? Your conversations take place in Spanish..." (D 4585, 4598, UCFPD Detective Kelli Smith to Adolfo Negron)

Had Counsel simply informed the jury of the language barrier, as could have been easily done through the State's key witnesses, Jest Esteves and Angelina Hamrick, the phone records would have become exculpatory, proving Petitioner *could not* have been the person coordinating the crime. In fact, this is precisely what Counsel argued at Petitioner's sentencing (Sentencing Transcripts "ST" 27-28). However, without this evidence introduced the State was able to mislead the jury to convict Petitioner.

> And look-a-here. Sean Killian called Negron (indicating). Calling Negron. Call to Negron. Call to Negron. Call to Negron (indicating). Okay? And look up here at Negron's phones. Calls to Killian - - Calls to Killian all over the place (indicating). Calls to Killian. Calls to Esteves... (TT. 562/22 - 563/3)
>
> Negron's on one of these phones, and Killian, working together to do their robbery... (TT. 562/22 - 564/1)
>
> Negron and Killian were planning a robbery and the cell phone records confirm that they're having all these phone calls back and forth, right up through the time of the killing, consistent with the testimony [of Hamrick and Medranda].. and the cell phone records support that... His cell phone record confirms it. The fact is, it's proved to you. (TTS 564/7-24)

After witnessing the State's emphatic contentions in reference to the chart, Counsel offered a grossly improper argument as a last ditch effort, hoping to Create doubt:

> If you write this number down, (742) 719-6459, and you take this number (indicating) and you reverse it, (954) 691-7247, it's the telephone number of the other party that was involved in this crime. And it's on his chart. Now, I can't tell you his name. You know why? 'Cause the rules won't permit me to tell you that. The rules won't permit me. But I can give you a hint. This right here (indicating), this evidence you have. These phone records (indicating), look in here. Find that number. It's gonna tell you what the state wouldn't tell you. The last name of the individual that was also at the crime. (TT. 579/22 - 580/9)

The State immediately objected that Counsel was again arguing facts not in evidence (just as with the sketch), and the Court again sustained the objection (TT. 580/10-12). At this point, every party present (excluding the Jury) was well aware of the theory of defense, yet as Counsel had not introduced any of the available evidence to support its theory (TT. 473/20-23), it was thus improper for Counsel to again resort to arguing facts not in evidence. The number that Counsel referred to above is Marcus Mercado's girlfriend's phone number (TT. 581/1-12), and his contact number with his Probation Office at this time (D. 4886). Yet, the State had used Esteves at trial to identify it with Negron (TT. 80/7-20).

As a result, the Jury was again left with only one easily refuted side of the argument. Counsel's omission left the jury with a profoundly misleading and false impression of the evidence, directly bolstering Petitioner's conviction on a theory that readily available and more direct evidence refuted.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

### GROUND FOUR
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PROPERLY ADVISE PETITIONER OF HIS FUNDAMENTAL RIGHT TO TESTIFY

**SUPPORTING FACTS:** Petitioner's right to testify in his own defense cannot be knowingly and intelligently waived without proper advice from Counsel. Throughout the proceedings, Defense Counsel operated under a clear misunderstanding of the law (TT. 503-506, 513-515), repeatedly and confidently assuring Petitioner of an acquittal. Based on this premise, Counsel never engaged in a meaningful discussion with Petitioner about his right to testify.

On October 7, 2005, after the verdict of guilty, Counsel exited the courtroom and approached the parents of Petitioner as well as Mr. Zak Longo and stated, as he shook his head, "I should have let Sean testify. The jury needed to hear him." They are prepared to testify of this statement.

At trial, Petitioner would have testified that he was not involved in the shooting; that he did not speak to anyone over any cell phone about committing a crime; that he had no ability to speak or understand the Spanish language; that the cell phone calls attributed to him were false; that the statements attributed to him are false; and that Hamrick's roommates were implicated in the *incident, falsely blamed Petitioner, and sued for the $10,000 reward (D. 4949, 2137).

The failure to explain to Petitioner his personal Constitutional right to testify as well as the fact that it was the decision of Petitioner whether or not to testify, was an omission that was demonstrably below that of normally competent Counsel to the prejudice of the accused. Petitioner will further testify that Counsel repeatedly assured him throughout the proceedings that the charges would be dropped, then that he would be found not guilty, and then that he would be acquitted, so his desire to testify was not important.

As a result, Petitioner never made a knowing and intelligent waiver of his right. Had he been properly advised that the decision was his alone and that his testimony was critical to rebutting the State's case, he would have taken the stand. Even if he would have been the only witness to directly deny the

---

* This testimony is substantiated within the records. For instance, although Hamrick was out of town (TT. 455), her roommates Alyse Rodriguez and Yezenia Valle were at home in Pegasus Landing during the incident (D. 2139). In Mercado's interview, he refers to Rodriguez as his "homegirl" (D. 847, 2230). Esteves remembered Negron calling a girl that night named "something like Jessania" (D. 433, 4503), yet with a "Y sound" (D. 2581), an apparent reference to Yezenia. Mercado claimed in April of 2005 that he hadn't been there for "six months" (D. 4838, 2 149, 21 54), although Pegasus Landing maintenance supervisor James Sullivan saw him there around early March (D, 127, other employees recognized him as well, [D. 127, 52]). Incidentally, this period corresponds within the approximate time that Hamrick's roommates began inculpating Petitioner in the incident. FDLE Special Agent Lee will testify that this type of thing is not the Petitioner's MO, but is Mercado's. Other investigators including Smith, Hartsfield, etc., will confirm the above findings of their investigations.

8

secondhand allegations against him and tell the jury he was not involved in the crime, there is none better than he to address each of the statements directly. Counsel's deficient advice and false assurances caused the forfeiture of Petitioner's only opportunity to speak for himself and confront his accusers before the jury, violating his personal right to testify in his own defense.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

### GROUND FIVE
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO CALL AN AVAILABLE EXCULPATORY WITNESS

**SUPPORTING FACTS:** In a case built entirely on secondhand testimony and circumstantial inference, direct evidence of innocence is paramount. Petitioner's co-defendant, Adolfo Negron, was available and willing to provide such evidence.

Petitioner repeatedly requested that his attorney call Mr. Negron to the stand. Mr. Negron gave multiple statements prior to petitioner's trial but never incriminated Petitioner, and was prepared to testify under oath that he was not involved in any murder or underlying robbery. This was not a minor witness; this was testimony from the self-admitted central participant that would have directly exonerated Petitioner of the State's proposed theory of events.

Despite knowing of this witness, his willingness to testify, and his client's request, Defense Counsel rested the defense case without calling a single witness. Counsel's failure to present this powerful and available exculpatory testimony deprived the jury of hearing direct evidence of Petitioner's innocence from a primary source, fatally undermining the reliability of the trial's outcome.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

### GROUND SIX
### INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO A PERVASIVE FAILURE TO PREPARE AND INVESTIGATE, RESULTING IN THE COLLAPSE OF THE ADVERSARIAL PROCESS

**SUPPORTING FACTS:** Counsel's lack of preparation was evident throughout the trial. His entire trial strategy was based on a mistaken legal theory—that the State's secondhand testimony was legally insufficient to convict under the then recently enacted Stand Your Ground Bill—which the court repeatedly rejected (TT. 503-506, 513-515). Relying on this flawed understanding, counsel made a promise to the jury in

his opening statement that they would hear "evidence from the State and the Defense" (VD. 88). He then broke that promise, resting his case without presenting a single piece of evidence or calling a single witness (TT. 473).

After the trial Counsel informed Petitioner's parents, Robert and Dorothea Killian, that just prior to trial his doctor had diagnosed him terminally ill with only weeks to live, possibly explaining why he was so scattered during the proceedings. For example, he admitted that he was unprepared to cross-examine the State's star witness because he had not familiarized himself with her prior statements (TT. 432-433, 454-455). Notwithstanding, the contradictory nature of Ms. Hamrick's *testimony can be demonstrated from the Record.

Moreover, Counsel's surprise during the State's other key witness, Medranda, is also reflected in the record (TT. 386/21-393/11), which especially materialized in his emphatic mention of a Brady hearing (TT. 571/17-19). When Hamrick and Medranda each testified, Counsel's conceding approach is seen (TT. 389/25-393/24, 457/4-460/21), and was also maintained through Closing Arguments (TT. 569/4-25, 574/3-25). Except, that is, when he was arguing that the discussions never happened (TT. 570/13-23, 534/3-15, 538/3-8).

Further, at Closing when, after admitting to having never proposed a theory of defense to the Jury, he states that he has "no other choice at this point" (TT. 568), and then began brainstorming various theories, audibly (TT. 568/15-581/21). This was not a strategic choice; it was the direct result of a fundamental failure to prepare. By doing nothing, Counsel left the State's circumstantial case, its factually impossible theory, and its misleading phone records entirely unrebutted. He failed to subject the State's case to any meaningful adversarial testing, effectively abandoning his role as an advocate for the accused.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

---

* For example, Hamrick stated that after being shot, the Decedent fell into a dumpster (D. 1489). This is refuted by the eyewitnesses (TT. 548/4-17, 21 1, 231-238, 1 53-154, 121-124, D. 142-144. 150-152). She stated that Petitioner and Negron (D. 4755), or at least just Petitioner, wore "all black" (D. 142-144), yet eyewitness Plummer stated the real suspects didn't (D. 142-143). She stated that Petitioner and Negron drove to the scene together (D. 4755). Esteves, Negron, and Ponder all stated that Petitioner was not present (D. 737-742, 4493, TT. 82-83, 2 1, 33-34). She stated that Petitioner knew of the deal "months" prior (D. 4763), or at least "weeks" (TT. 457/4-15). It wasn't set up until "days" prior (Tr. 105). She stated that Petitioner knew the deal was for $20,000.00 prior (TT. 441-442), which, although matching the sum found on Kennon and broadcast on the news, is $5,000 more than Esteves and Negron had agreed upon (TT. 107). Being that even Negron didn't know of the extra $5000, and he was the only link to Petitioner (TT. 32-33, 4647), the Petitioner couldn't have known about the $20,000 either. Particularly, not "months" prior as it was only agreed upon by Ponder and Esteves on the day of the incident (TT. 71/1-72/25). Additionally, Counsel also failed to introduce Hamrick's proclivity to conform her answers toward her investigator's leading, even if it meant contradicting herself(See D. 4763, cf. TT. 457/4-15, D. 4769-4770, cf. TT. 29/10-14, 564, etc.).

10

### GROUND SEVEN
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PREVENT THE JURY HEARING HIGHLY PREJUDICIAL EVIDENCE OF UNRELATED, UNCHARGED CRIMES

**SUPPORTING FACTS:** The State's case relied heavily on the testimony of Remy Medranda. Mr. Medranda was able to testify that he only contacted police because he suspected Petitioner of being involved in a completely separate and uncharged alleged incident at his apartment (TT. 380-386). This evidence of a collateral, uncharged crime was irrelevant to the murder case and was profoundly prejudicial. Its only purpose was to paint Petitioner as a person of bad character with a propensity to commit violent crimes, making it easier for the jury to believe he committed the murder. Further, Counsel also failed to prohibit the State from introducing foreseeable but unrelated and uncharged allegations that Petitioner owned a firearm (TT. 447) and sold marijuana (TT. 363-364). Counsel also failed to prohibit the State from introducing the fact that Petitioner was already in jail (TT. 436).

A reasonably competent attorney would have filed a motion in limine to exclude any mention of this evidence. Defense These admissions effectively assassinated the character of the Petitioner, placing him squarely within the loathsome character of an incarcerated drug dealer/robber who possesses guns. This was completely unnecessary and easily avoidable had Counsel precluded the admission of such collateral acts. His failure allowed the State to secure a conviction based on improper character assassination rather than on the evidence of the crime charged, violating Petitioner's right to a fair trial on the merits.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND EIGHT
### INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT TO THE PROSECUTOR'S IMPROPER AND PREJUDICIAL CLOSING ARGUMENTS

**SUPPORTING FACTS:** A fair trial requires that a verdict be based on the evidence and the law, not on the prosecutor's personal beliefs or improper arguments that distort the legal process.

For example, during closing arguments, the State described the Petitioner this way: "It just ain't right... It just ain't right: sort of reminds me of a story about a kid that kills his parents and then complains he's an orphan" (TT. 553-554), additionally calling the defense "a made up story" (TT. 553).

Defense Counsel sat silent. He failed to object to any of these improper statements. His silence allowed the prosecutor to corrupt the trial by inviting the jury to rely on the State's authority instead of the

11

evidence and to abandon the presumption of innocence. Counsel's failure to protect the integrity of the proceedings deprived Petitioner of a fair trial.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND NINE
### THE CUMULATIVE EFFECT OF COUNSEL'S ERRORS DESTROYED THE RELIABILITY OF THE VERDICT AND DENIED PETITIONER A FAIR TRIAL

**SUPPORTING FACTS:** The series of profound errors committed by Defense Counsel, when viewed in their totality, created a complete breakdown of the adversarial process.

The trial proceeded with an admittedly biased juror. The jury was then systematically deprived of all available exculpatory evidence: eyewitness testimony proving Petitioner's physical impossibility of being the suspect, the police sketch of another suspect, whom had first implicated Petitioner, and the language barrier that neutralized the State's key physical evidence. The jury never heard from Petitioner himself or from his co-defendant who would have exonerated him. Instead, the jury was improperly swayed by prejudicial evidence of uncharged crimes and subjected to a closing argument that distorted the burden of proof and relied on prosecutorial vouching. Each error compounded the others, ensuring that the jury deliberated with a completely one-sided and fundamentally distorted view of the facts.

The cumulative impact of these deficiencies so thoroughly undermined confidence in the outcome that the resulting verdict cannot be considered reliable. Petitioner's conviction was not the product of a fair adversarial contest, but the result of its unconstitutional collapse.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND TEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE STATE'S DISCOVERY VIOLATION

**SUPPORTING FACTS:** The State's case against Petitioner relied heavily on the testimony of Remy Medranda, who recounted alleged statements made by Petitioner. In pre-trial discovery, the State provided the defense with a summary of Mr. Medranda's expected testimony. Based upon the disclosed document Defense Counsel planned to show that Mr. Medranda's knowledge of the crime came from news reports and neighborhood gossip, not from Petitioner.

At trial, the prosecutor led Mr. Medranda through testimony that included new, highly prejudicial details that were never disclosed to the Defense (TT. 570-580). These new details included the specific

location of the crime, assertions that Petitioner was an actual shooter, and precise locations of the Decedent's wounds. The State also elicited testimony that Mr. Medranda had previously told the State that the disclosed summary was inaccurate—a fact the State never shared with the defense.

Defense Counsel was caught completely off guard, immediately objected, and informed the court of the discovery violation. He argued that the State was required to disclose these oral statements and that the surprise testimony crippled his defense. Counsel requested a hearing to address the violation and the resulting prejudice. The trial court, however, failed to conduct the required hearing and simply instructed Counsel to "move on." The State has a continuing duty to disclose evidence material to the proceedings in order to prevent surprise and to facilitate a truthful fact finding process.

The Court was obligated to conduct the necessary hearing to determine what effect this situation had on the Defense's ability to properly prepare. Counsel's surprise is seen, and trial preparation would have been materially different but for the violation. By failing to raise this issue on appeal, Appellate Counsel allowed a conviction to stand that was secured through trial by ambush, in direct violation of due process.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND ELEVEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE IMPROPER ADMISSION OF CO-CONSPIRATOR HEARSAY

**SUPPORTING FACTS:** Over a continuing defense objection, the trial court permitted State witness Jest Esteves to testify about incriminating out-of-court statements allegedly made to him by Napoleon Ponder, Adolfo Negron, and the Decedent. The State argued that this testimony was admissible under the co-conspirator exception to the hearsay rule. However, the State offered no independent evidence, outside of the hearsay statements themselves, to specifically establish that Mr. Ponder was involved in any conspiracy with Petitioner.

The trial court admitted the testimony provisionally, stating that the State would have to "tie in" Mr. Ponder's involvement later or risk a mistrial. The State never did so. However, the Court did extend the objection "to all statements from parties who are not present... for cross-examination." Mr. Ponder was later charged and acquitted of any involvement in the crime. The admission of this testimony allowed the State to build its case using statements from an accuser whom Petitioner had no opportunity to cross-examine, a clear violation of his Sixth Amendment right to confrontation. Appellate Counsel failed to raise this on appeal.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

13

<u>GROUND TWELVE</u>
INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR
FAILING TO RAISE THE PREJUDICIAL USE OF SUMMARY
PHONE CHART

**SUPPORTING FACTS:** The State sought to link Petitioner to the crime through phone records, but could not establish who made the calls. They created a "summary chart" to present to the jury which Counsel objected to strenuously, arguing the chart was not a summary but a misleading interpretation of the evidence. The State argued that the records upon which the chart was based were too complicated, but consisted of only seven pages of phone bills and not necessitating the prejudicial summary chart.

Counsel contended against the chart more than any other part of the State's case (TT. 54/6 — 57/5, 406/24 - 432/1, 559/7-25), calling it "misleading" (TT. 567/3), "incomplete" (TT. 410/1), "incorrect" (TT. 422/21), "highly prejudicial" (TT. 421/22-23), "wrong" (TT.425/24), "flawed" (TT. 566/23), "a falsehood" (TT. 567/22), "not true" (TT. 559/13), "something done to misguide the Jury" (TT.568/3), and "an example of a miscarriage of justice" (TT. 568/7-8).

The chart went far beyond the evidence by assigning specific names, including Petitioner's, to the calls, creating a visual link to the decedent that the evidence did not support. The trial court conceded the chart was an "interpretation," not a summary, and ruled it could not be admitted into evidence. However, the court allowed the prosecutor to use the chart as a "demonstrative aid" during closing arguments.

> So then you say, well, the only evidence we have that he was involved were the statements [of Hamrick and Medranda]. That's not quite true, but it's close to true. We've got evidence from cell phone ...records which show that Sean Killian was calling Adolfo Negron back and forth this whole time, communicating, setting it up. When you gonna get here? How are we gonna do this? Okay? (TT. 550)
>
> And look-a-here. Sean Killian called Negron (indicating). Calling Negron. Call to Negron. Call to Negron. Call to Negron (indicating). Okay? And look up here at Negron's phones. Calls to Killian - - Calls to Killian all over the place (indicating). Calls to Killian. calls to Esteves... (TT. 562/22 - 563/3)
>
> Negron's on One of these phones, and Killian, working together to do their robbery... (TT. 562/22 - 564/1)
>
> Negron and Killian were planning a robbery and the cell phone records confirm that they're having all these phone calls back and forth right up through the time of the killing, consistent with the testimony [of Hamrick and Medranda] ...and the cell phone records support that... His cell phone record confirms it. The fact is, it's proved to you. (TTS 564/7-24)

The jury was never given a limiting instruction that the chart was not evidence, and the defense was given no opportunity to cross-examine the chart's creator which served to mislead the jury.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

14

### GROUND THIRTEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PREJUDICIAL REFERENCES TO PETITIONER'S INCARCERATION

**SUPPORTING FACTS:** During the trial, the prosecutor elicited testimony from the State's lead witness that she had visited Petitioner "in jail" (TT. 436-437). The defense immediately objected. Although the court provided a curative instruction, the damage was done, and the presumption of innocence was compromised. The prejudice was compounded when the State made at least two more references to Petitioner's incarceration, with no further instruction from the court. The State then exploited this information in its arguments, implying closeness between the witness and Petitioner to bolster her credibility. The repeated references destroyed the presumption of innocence and unfairly painted Petitioner as a guilty man in the eyes of the jury. Appellate Counsel's failure to raise this preserved issue of prejudice was deficient.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND FOURTEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE FAILURE TO GIVE A SELF-DEFENSE INSTRUCTION

**SUPPORTING FACTS:** The State's own key witnesses testified that the plan was not to hurt anyone and that the Decedent was shot only after he "pulled out a gun" or "reached" for a weapon (TT. 367, 445-451). Based on this evidence, which was introduced by the State itself, Defense Counsel requested that the jury be given an instruction on self-defense. Further, the testimony showed that the Decedent was not pursued and was permitted to leave with the money still in his possession after the conflict.

The trial court denied the request based on the State's reliance on the Felony Murder theory that an underlying robbery was taking place, negating any claim of self-defense. However, Petitioner was not charged with robbery or felony murder. The State had, in fact, superseded its original indictment, removing felony murder and any underlying felonies, proceeding to trial only on a charge of premeditated murder (See Discovery pages 17-18 and 57-58, filed May 10, 2005 and Amended August 30, 2005).

Petitioner was constitutionally entitled to the instruction. Appellate Counsel was ineffective for failing to appeal the refusal to instruct the jury on a central theory of defense supported by the evidence.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND FIFTEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE ISSUE OF EXCESSIVE LEADING QUESTIONS

**SUPPORTING FACTS:** Throughout the short trial, the court sustained approximately 20 defense objections to the State's use of leading questions with key witnesses. The prosecutor's conduct was so persistent that he repeatedly prefaced his questions with "I'm not trying to put words in your mouth, but..." While discretion is allowed in leading hostile or adverse witnesses no such determination was made in this case. The State was permitted to testify for its key witness who had attempted to retract.

This pattern was particularly damaging during the testimony of the key witness who was central to the State's case, Angelina Hamrick. This witness repeatedly stated she could not remember key details (approx. 30x), and had previously told detectives what they wanted to hear because she was scared and under pressure (TT. 464-465). The prosecutor used leading questions to effectively testify for her, feeding her the answers needed to convict Petitioner. However, a review of the Record shows a myriad of contradictions in her elicited testimony (See Ground Six, page 10, footnote of the instant petition).

Given the weakness of the State's case, which rested almost entirely on the testimony of two witnesses, allowing the prosecutor to essentially construct the narrative from the witness stand was highly prejudicial. Appellate Counsel was ineffective for failing to raise this issue of pervasive prosecutorial

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

### GROUND SIXTEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE UNLAWFUL SEARCH OF CELL PHONES

**SUPPORTING FACTS:** During trial, a detective admitted on the record they had accessed and reviewed information contained in the cell phones found at the crime scene before obtaining a warrant (TT. 303-317). The detective claimed the information was needed from the phones to get the warrant. However, the phones were found at the scene of a homicide, more than sufficient probable cause.

All information subsequently discovered from the phones—which formed a major part of the investigation and the State's case—was fruit of the poisonous tree and should have been suppressed. Appellate Counsel was ineffective for failing to raise this dispositive constitutional violation on appeal.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

## GROUND SEVENTEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE STATE'S FAILURE TO ESTABLISH A PREDICATE FOR A CONFESSION

**SUPPORTING FACTS:** Before the State introduced Petitioner's alleged confession through the testimony of witness Angelina Hamrick, Defense Counsel objected and requested a ruling from the court on whether the State had established corpus delicti (TT. 440-441).

A fair review of the record shows that, apart from the alleged confessions themselves, there was no independent evidence connecting Petitioner to the crime. No eyewitnesses and no physical evidence. The State's case consisted solely of the alleged admissions being "confirmed" by the summary chart of phone records. The court's ruling improperly allowed the alleged confession to serve as its own predicate, a clear error of law. Appellate Counsel was ineffective for failing to pursue this issue on appeal.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED.

## GROUND EIGHTEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE PREJUDICIAL REFERENCES TO UNCHARGED OFFENSES

**SUPPORTING FACTS:** The defense never placed Petitioner's character at issue during the trial. Despite this, the prosecutor knowingly elicited testimony from witness Remy Medranda that Petitioner was a dealer of marijuana (TT. 363-364). This testimony was unrelated to the murder charge and served only to attack Petitioner's character and portray him as a person with a propensity to commit crimes.

The defense objected, and a curative instruction was given. However, the prejudicial testimony suggested to the jury that Petitioner lived a criminal lifestyle, making it more likely he committed the charged offense. This improper character evidence further bolstered the State's weak circumstantial case. Appellate Counsel was ineffective for failing to appeal this preserved issue of prosecutorial misconduct.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

## GROUND NINETEEN
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE ERRONEOUS DENIAL OF THE MOTION FOR JUDGMENT OF ACQUITTAL

**SUPPORTING FACTS:** Defense Counsel moved for a judgment of acquittal, arguing the State had failed to present sufficient evidence of premeditation (TT. 468-471). The testimony presented by the State indicated that a shooting was not part of any plan, but a spontaneous reaction to a perceived threat from the Decedent, who was not pursued and permitted to leave with all the money.

The Record is silent on any fully formed conscious purpose to kill, or deliberation of murder. In response - and throughout trial - the State improperly relied on a felony-murder theory, with the underlying felony of robbery, which was not charged in the superseding amended indictment (See Record pages 17-18 and 57-58, filed May 10, 2005 and Amended August 30, 2005). The jury was subsequently instructed on felony murder and robbery (TT. 593-603), while the general verdict form simply states "Guilty of First Degree Murder, as Charged in the Indictment" (See Record page 103; TT. 621), making it impossible to determine whether the jury convicted of the charged crime or the uncharged Felony Murder theory. Appellate Counsel's failure to raise this meritorious and outcome-determinative issue was constitutionally deficient.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

### GROUND TWENTY
### INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE ERRONEOUS DENIAL OF THE MOTION FOR NEW TRIAL

**SUPPORTING FACTS:** Defense Counsel moved for a New Trial (D. 136-143). Counsel argued there was no evidence proving Petitioner was present at the crime, no one saw him leave the scene, no guns, DNA, etc associating Petitioner with the crime or ever being at the scene, and no independent evidence submitted to the jury establishing a connection of Petitioner to the crime other than the alleged confessions. Therefore, Counsel submitted, the verdict is contrary to the law, and respectfully requested the Court grant a new trial on all issues relating to the above (D. 138).

The Trial Judge had health issues during the proceedings and quickly retired afterward, so a different judge heard and denied the motion (id.). However, in his comments during sentencing Petitioner's Judge revealed a clear confusion of the facts:

> There's no question that Sean Killian was the incipient cause of the planning of this robbery... creating the scenario... The idea for this robbery, from all of the testimony is very clear, to be generated by Sean Robert Killian. He's the one that planned it. He's the one that set it up and caused the first domino in the chain of dominoes to go until he ends up here with a first degree murder conviction" (ST. 31-33)

Contrary to the Judge's comments there was no evidence, not a single statement or reference to Petitioner having played such a role in this case. The Appellate Court was in a superior position to objectively review the proceedings and address Counsel's motion for new trial. Appellate Counsel's failure to raise this issue on appeal prohibited Petitioner from obtaining relief.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

<u>GROUND TWENTY ONE</u>
**INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE DISPARITY IN SENTENCES**

**SUPPORTING FACTS:** Months after Petitioner's trial his co-defendant, Adolfo Negron's case was resolved. Negron was given a plea for Second Degree Murder and received a thirty year sentence. No plea was offered to Petitioner despite his lesser culpability according to the State's theory. The record shows the State was aware that Negron admitted to being the gunman in the incident, was more culpable than Petitioner in that he initiated and orchestrated the event (TT. 31, 553-557, 565-566), had a previous record of charges unlike Petitioner, and did not assist the State in any way to receive leniency. Petitioner is currently serving a sentence of natural life simply for exercising his right to trial by jury. Due to the timing of these proceedings Appellate Counsel was the first representation able to bring this up and is ineffective for failing to bring the issue to the attention of the Appellate Courts for review.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

<u>GROUND TWENTY TWO</u>
**INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILING TO RAISE THE FUNDAMENTALLY INCONSISTENT THEORIES OF SAME OFFENSE WITH CO-DEFENDANTS**

**SUPPORTING FACTS:** Throughout Petitioner's trial the State argued the law of principals in respect to First Degree Felony Murder regarding co-defendant Negron's unattested culpability (TT. 31, 553-557, 565-566). Petitioner's Jury would be shocked to learn that the same State Attorney turned around and resolved Negron's case as a Second Degree Murder with a thirty year sentence. The fundamental shift in theories, while convenient to the State, violates Petitioner's Constitutional Rights. Appellate Counsel is ineffective for failing to present the issue to the reviewing court.

THIS CLAIM WAS SUMMARILY DENIED IN STATE COURT; EVIDENTIARY HEARING IS REQUESTED

13. All of the issues before this court are properly exhausted in the State courts.
14. Petitioner does not have any appeals or petitions pending in any court, either state or federal, as to the judgment under attack.
15. Petitioner does not have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment he is challenging.

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) Trial and sentencing: Robert J. Nesmith, Orlando, Florida
    (b) Direct appeal: Ailene S. Rodgers, Daytona Beach, Florida
    (c) Rule 9.141(c) State Habeas Petition: Pro-se
    (d) Post-conviction 3.850(b)(3): Charles R. Holloman

17. Petitioner does not have any future sentence to serve after he completes the sentence for the judgment that he is challenging.

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition. <u>Petition is timely filed.</u>

### PRAYER FOR RELIEF

WHEREFORE, Petitioner Sean Robert Killian respectfully requests that this Honorable Court:

A. Issue a Writ of Habeas Corpus, vacating his judgment and sentence;

B. Order that he be released from custody or, in the alternative, grant him a new trial; and;

C. Grant such other and further relief as this Court may deem just and proper.

### OATH

I declare under penalty of perjury that the foregoing is true and correct. Executed on

October 16, 2012

Executed (date).                                          Signature of Petitioner

Provided to South Bay Corr. and Rehab Facility on October 16, 2012 for mailing.